1  ANN A. NGUYEN (178712)
   ROBINSON & WOOD, INC.
2  227 N 1st Street
   San Jose, California 95113
3  Telephone:    408-298-7120
   Facsimile:    408-298-0477
4  Email:        aan@robinsonwood.com

5  Attorneys for Plaintiff,
   CUC DANG

6                                                      ***E-FILED - 8/3/11***

7  JAMES McMANIS (40958)
   SHARON KIRSCH (157157)
8  MATTHEW SCHECHTER (212003)
   McMANIS FAULKNER
9  A Professional Corporation
   50 West San Fernando Street, 10th Floor
10 San Jose, California 95113
   Telephone:    408-279-8700
11 Facsimile:    408-279-3244
   Email:        skirsch@mcmanislaw.com
12               mschechter@mcmanislaw.com

13 Attorneys for Defendant,
   SUTTER'S PLACE, INC. dba BAY 101

14
                   UNITED STATES DISTRICT COURT
15                 NORTHERN DISTRICT OF CALIFORNIA
                          SAN JOSE DIVISION
16

17 | CUC DANG,                                    | Case No. 10-CV-02181 (RMW)
18 |     Plaintiff,                               |
   |                                              | **JOINT CASE MANAGEMENT**
19 | vs.                                          | **CONFERENCE STATEMENT AND**
   |                                              | **DISCOVERY PLAN; []**
20 | SUTTER'S PLACE, INC. dba BAY 101 or          | **ORDER**
   | BAY 101 CASINO, UNITE HERE! LOCAL            |
21 | 19, and DOES 1 through 20, inclusive,        | Date:   July 8, 2011
   |                                              | Time:   10:30 a.m.
22 |     Defendants.                              | Crtm.:  6, 4th Floor
   |                                              | Judge:  Honorable Ronald M. Whyte
23
                                                    Complaint Filed: May 20, 2010
24                                                  Trial Date: September 10, 2012
25

26

27 ///

28 ///

---
1
JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND DISCOVERY PLAN; []
ORDER; CASE NO. 10-CV-02181 (RMW)

Pursuant to this Court's Order, dated April 6, 2011 ("the April 6th Order"), and issued following the parties' March 25, 2011 Case Management Conference, plaintiff, Cuc Dang ("plaintiff"), and defendant Sutter's Place, Inc. dba Bay 101 ("Bay 101") hereby submit this Joint Case Management Statement and Discovery Plan.

**1.  Jurisdiction and Service.**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185. There are no issues as to service of process, personal jurisdiction, subject matter jurisdiction or venue.

Bay 101 has appeared and filed its Answer to the First Amended Complaint on December 8, 2010.

Defendant, UNITE HERE! Local 19 ("Local 19" or "the Union"), was dismissed with prejudice pursuant to a stipulation and order filed on September 22, 2010.

**2.  Facts.**

Plaintiff:

Against Bay 101, Plaintiff alleges the following causes of action: (1st) failure to provide rest breaks and meal periods, (2nd) failure to pay overtime wages, (3rd) failure to pay wages upon termination, (4th) gender/sex discrimination, (5th) race/national origin discrimination, (6th) hostile working environment, (7th) retaliation, (8th) wrongful termination in violation of public policy, (9th) unfair business practices, and (11th) intentional and/or negligent infliction of emotional distress. Bay 101 filed a motion to dismiss and a motion to strike, seeking dismissal of all claims. In its November 24, 2010 Order, the Court dismissed, without prejudice, only the stand alone claim for infliction of emotional distress (11th cause of action) as duplicative of the damages available under the other causes of action. Bay 101's motions were otherwise denied.

Following is a factual summary relevant to the case against Bay 101:

Plaintiff Cuc Dang is a Vietnamese American woman who worked as a cook, and later as a food server, at Bay 101 Casino from June, 2006 to December, 2009. As required of her employment, Plaintiff was a dues paying member of Local 19 and was covered by a collective bargaining agreement ("CBA").

Throughout Plaintiff's employment, Bay 101 regularly required her to work through rest periods because of insufficient staffing. In addition, she was frequently required to work even though she was clocked out for meal periods. Plaintiff was forced to clock out despite still having to work because Bay 101 penalized any employee who did not clock out or failed to clock out for the full thirty (30) minute meal period.

During her time at Bay 101, Plaintiff suffered sexual harassment at the hands of a supervisor named Lucio (last name unknown). After Plaintiff reported Lucio's conduct to other supervisors, the harassment ceased only temporarily. Bay 101 did not take Plaintiff's complaints seriously until she sent a letter demanding an investigation, as a result of which Bay 101 suspended Lucio and transferred Plaintiff to a different shift. However, Plaintiff still suffered harassment from Lucio when their shifts overlapped. In addition, Plaintiff had to work under supervisors who knew of Plaintiff's sexual harassment complaints against their friend, Lucio. Those supervisors retaliated against Plaintiff by making her work environment much more difficult.

Plaintiff's primary supervisor, Nick Ortega, is also known for discriminating against Vietnamese workers. Mr. Ortega has made derogatory comments regarding Vietnamese workers and has treated Vietnamese employees more harshly than he treated employees of other national origins.

On October 4, 2009, a co-worker interfered with Plaintiff's work in order to steal Plaintiff's customers and tips. Bay 101 failed to conduct a full investigation and, instead, merely retaliated against Plaintiff by accusing Plaintiff of arguing with a co-worker and a customer, by suspending Plaintiff for two days, and by demoting Plaintiff back to work as a cook in the kitchen.

On October 13, 2009, Plaintiff sent a letter to Bay 101's owners to protest the discrimination and retaliation directed against her. Bay 101 sent an investigator to interview Plaintiff, but to date, Plaintiff has not been advised regarding the result of said investigation. On November 5, 2009, plaintiff filed a complaint with the California Department of Fair Employment and Housing (DFEH) and received a right to sue letter.

1      The unfair treatment Plaintiff received caused her to suffer severe depression and forced
2  her on medical leave for several weeks. When Plaintiff returned to work, the retaliation
3  continued. On December 20, 2009, Plaintiff worked her regularly scheduled shift from 11:00
4  p.m. to 7:00 a.m. the next morning. December 21, 2009 was Plaintiff's day off, for which she
5  had already scheduled important family obligations. Shortly before the end of Plaintiff's shift,
6  her supervisor Nick Ortega demanded that she stay to attend a meeting with HR. Plaintiff had no
7  prior notice of that meeting and, when she inquired about the purpose of the meeting, she was
8  given no explanation for the last minute meeting. She described her family obligations to the
9  supervisor and asked that the meeting be rescheduled. Plaintiff then left work for the day.
10 When Plaintiff went to Bay 101 the following day to pick up her holiday bonus check, she was
11 informed that she had been fired and, thus, she would not be receiving a bonus. Plaintiff had no
12 information regarding her termination until she subsequently received a letter in the mail that she
13 had been terminated for "job abandonment"—a reason that was untrue. Plaintiff believes that
14 Bay 101 terminated her in retaliation for the complaints she lodged for unlawful harassment,
15 discrimination and retaliation.
16     Plaintiff filed a grievance with her union, Local 19, which pursued the matter to
17 arbitration on August 10, 2010. In her decision issued on November 26, 2010, the arbitrator
18 found that Bay 101 did not have just cause to terminate Plaintiff. The arbitrator ordered that
19 Plaintiff be reinstated and made whole. To date, however, Bay 101 has refused to comply with
20 the arbitrator's award. When Plaintiff learned that the arbitrator had ordered Bay 101 to reinstate
21 her, Plaintiff requested to be reinstated to a different position because Plaintiff did not want to
22 work under the same supervisors who harassed and retaliated against her. When Bay 101
23 refused to assign Plaintiff to a different department, Plaintiff requested a different shift. Plaintiff
24 was still suffering from the stress and depression caused by Bay 101's termination of her
25 employment, and thus, did not want to work the graveyard shift, which would worsen her already
26 fragile mental health. Even though Plaintiff provided Bay 101 with a note from her mental
27 health care provider to support Plaintiff's request, Bay 101 refused to accommodate Plaintiff's
28 request. Since Plaintiff wanted to be employed, Plaintiff relented and agreed to be reinstated to

1   the graveyard shift.  However, Bay 101 now contends that it no longer has to reinstate Plaintiff
2   or make Plaintiff whole.

3         Defendant Bay 101:

4         Dang's claim that Lucio harassed her occurred in 2007.  Bay 101 transferred Dang to a
5   new shift and she said she was satisfied with how the complaint was handled.  No one retaliated
6   against Dang for this complaint.

7         On Sunday, October 4, 2009, around Midnight, Dang got into an argument with a
8   customer and another Bay 101 employee on the casino floor.  As a result of this incident, Dang
9   was suspended from work for two days.  After she was suspended, Dang filed a grievance with
10  her Union, Local 19, alleging discrimination, harassment and unfair disciplinary action by Bay
11  101.  A few days after filing the grievance, Dang sent a letter to Bay 101 management alleging,
12  among other things, discrimination and retaliation by her supervisor and the HR Manager.

13        As a result of the grievance, a mediation was scheduled for November 23, 2009 at Bay
14  101.  Following the mediation, it was determined that Bay 101's suspension of Dang was valid
15  and no further action was taken.  Dang's performance was an ongoing issue.

16        In response to the letter to management, Bay 101 hired an outside investigator to look
17  into the allegations made by Dang.  Upon completion of the investigation, Ron Werner, Vince
18  Shaw (Bay 101's Director of Operations), Jennifer Gilbert (HR Manager), and Nick Ortega
19  (Food and Beverage Director and Dang's supervisor), met and decided that Dang would be told
20  the outcome of the investigation and be placed on a performance improvement plan which would
21  involve further training as a casino server to help her improve and succeed.  The meeting to
22  advise Dang of this was scheduled for Monday, December 21, 2009 at 7:00 a.m. in HR.  The
23  meeting was to take ten to fifteen minutes, and, although Dang was to receive a warning which
24  included a list of areas of needed improvement and information about her training, the meeting
25  was not investigatory in nature and would not involve the imposition of discipline.  Vince Shaw
26  ("Shaw"), Jennifer Gilbert ("Gilbert"), and Nick Ortega ("Ortega") were to be present at the
27  meeting.  Dang would be paid for her time at the meeting, including overtime pay if she was
28  eligible for it.

1    Bay 101 did not retaliate against Dang.  She was terminated for refusing to attend a
2 mandatory meeting.  On December 21, 2009, Ortega came into work at approximately 3:30 a.m.
3 so as to be able to give Dang a few hours notice of the 7:00 a.m. meeting.  Around 4:00 a.m.,
4 along with the Lead Kitchen Supervisor Phongphun ("Ken") Meakcharoon, Ortega approached
5 Dang in the kitchen and told her that there was a meeting in HR at 7:00 a.m. that she needed to
6 go to.  Dang said that she was tired and had "stuff" she needed to do.  She did not make any
7 mention of what that "stuff" was.  After her termination she claimed that she had to pick up her
8 daughter and that she needed to take her husband to a medical appointment.  Ortega told Dang
9 that she needed to be at the meeting and that it would only take about ten minutes.

10   After speaking to Dang, Ortega intended to call Shaw and Gilbert tell them he spoke to
11 Dang, that she did not want to stay past 7:00 a.m., and to see if they could come in earlier so that
12 the meeting could occur prior to the end of Dang's shift.  Before Ortega could call them,
13 however, he received a call from an individual claiming to be Dang's husband.  Dang's husband
14 demanded to know who authorized the meeting and what it was about.  Ortega said the meeting
15 was set up by Ron Werner ("Werner") and Ortega could not discuss the details of the meeting
16 with the caller.  Dang's husband told Ortega that Dang would not be attending the meeting
17 without him being present, that he was going to contact an attorney, and that if Werner wanted to
18 speak with him then he could call him.  When Ortega asked the caller if he was refusing, on
19 Dang's behalf, for Dang to go to the meeting, the caller said yes.

20   Shortly after the call ended, Dang asked Ortega if she could leave early as she was tired.
21 Once again Dang made no mention of needing to pick up her daughter or that she needed to take
22 her husband to a medical appointment.  Ortega said okay given that Dang, through her husband,
23 was refusing to attend the 7:00 a.m. meeting.  Ortega then called Shaw and Gilbert and left them
24 messages telling them that Dang was refusing to come to the scheduled 7:00 a.m. meeting.

25   Shaw notified Werner that Dang refused to attend the meeting through her husband.
26 After questioning Shaw, Gilbert and Ortega, Werner made the decision to terminate Dang's
27 employment.  Werner told Gilbert that Dang was being terminated and to prepare the necessary
28 paperwork.  Gilbert asked Ortega to promptly prepare a counseling memo regarding what took

1  place on December 21, 2009.  The counseling memo, dated December 21, 2009, stated that Dang
2  was being terminated as of that date.  The subject of the memo was "insubordination."
3        After learning of her termination, Dang filed a grievance with Local 19, dated December
4  23, 2009, claiming "[w]rongful discharge and violation of Union Contract."  A mediation
5  regarding this grievance occurred on February 10, 2010.  The only issue discussed at the
6  mediation was Bay 101's termination of Dang.  The mediation was not successful and, on
7  February 12, 2010, Local 19 formally requested that the matter go to arbitration.  The arbitration
8  as to Dang's termination took place on August 10, 2010.  Dang filed her lawsuit after requesting
9  arbitration, but before the matter was actually arbitrated.
10       On November 26, 2010, the arbitrator submitted the Arbitration Award, awarding Dang
11 reinstatement and to be "made whole."  Bay 101 attempted for over 2 months to have Dang
12 report to Bay 101 to begin the process of returning to work on the graveyard shift, the same shift
13 that she worked before she was terminated.  Dang unequivocally refused to even begin the
14 process of being reinstated so that she could return to work unless Bay 101 permitted her to work
15 the swing shift.  Dang did not have sufficient seniority to bump other employees in order to be
16 placed on that shift and the Union was not willing to waive the rights of other employees, leaving
17 Bay 101 no alternative.  Bay 101 did offer to place Dang in a housekeeping job, which pays
18 more than the server position but retains Union benefits.  Dang refused to be a housekeeper.
19 Once Bay 101 offered Dang full reinstatement and she refused, Bay 101's obligations under the
20 Award and the Union contract were fulfilled.  A week later, Dang decided to ignore her
21 therapist's advice and agreed to return to work on the graveyard shift.  Her belated decision did
22 not revive Bay 101's obligations.
23       Dang makes claims for the failure to provide meal and rest breaks, the failure to pay
24 overtime wages, and the failure to pay wages upon termination.  Dang alleges that she was
25 required to work through meal and rest periods, as well as to work "off the clock" while she was
26 clocked out for meal periods.  Dang also alleges that as a result of being unable to take meal and
27 rest breaks, as well as having to attend required training sessions, she worked in excess or eight
28

hours a day and/or forty hours a week for which she did not receive overtime and which remained unpaid at the time of her termination.

Throughout her employment, Dang took meal and rest breaks. She clocked in and out on the company's time clock and filled out daily tracking sheets which prove this. Dang's grievance did not include claims for meal and rest breaks, or for overtime. The subjects are covered in the CBA and should have been grieved.

### 3. Legal Issues.

Plaintiff:

Plaintiff believes that the legal issues raised by Bay 101 herein were raised in defendant's motion to dismiss and motion to strike, all of which were addressed and ruled upon by the Court's November 24, 2010 order on said motions.

Defendant Bay 101:

Bay 101 contends the following legal issues are present:

1. Whether plaintiff's claims are barred due to her failure to exhaust all remedies available to her under the applicable CBA as required by the Labor Management Relations Act ("LMRA").

2. Whether plaintiff's causes of action for overtime wages, alleged violation of Business and Professions Code section 17200, and for intentional infliction of emotional distress are barred by preemption under the LMRA.

3. Whether plaintiff's cause of action for intentional infliction of emotional distress is preempted by the California's Workers' Compensation Act and/or is barred by the "new right-exclusive remedy" doctrine.

4. Whether Bay 101 was obligated to ensure that plaintiff took meal and rest breaks, or whether Bay 101 satisfied its obligation by making meal and rest periods available to her. Whether plaintiff is entitled to overtime pay for any meal periods or rest periods, if any, that she missed.

5. Whether plaintiff exhausted her administrative remedies under California's Fair Employment and Housing Act.

1    6.    Whether plaintiff's claims for sexual harassment by Lucio are barred by the statute of limitations and failing to exhaust administrative remedies.

7.    Whether plaintiff is entitled to overtime for her alleged failure to take breaks.

8.    Whether plaintiff's paid meal break acts as a set off toward any claims for penalties and wages for her alleged failure to take meal and rest breaks.

**4.    Motions.**

At this time, Plaintiff does not anticipate filing any motions, other than motions to compel in the event of discovery disputes that cannot be resolved informally.

Bay 101 filed a motion to dismiss the first through ninth and eleventh causes of action in plaintiff's First Amended Complaint ("FAC") as well as a motion to strike. On November 24, 2010, the Court issued an Order granting Bay 101's motion to dismiss as to the eleventh cause of action for infliction of emotional distress and otherwise denying the motion. The motion to strike was also denied.

Bay 101 will file a motion to compel an independent mental exam. Because of plaintiff's eleven causes of action, numerous allegations, and the need for an interpreter Bay 101 will file a motion seeking permission from the Court for plaintiff's deposition to exceed the "1 day of 7 hours" limitation imposed by Fed. R. Civ. P. 30(d)(1). Pursuant to the April 6th Order, the last day to file motions regarding fact discovery is February 27, 2012. Bay 101 may also file a motion for summary judgment and/or a motion for summary adjudication. Pursuant to the April 6th Order, the last day to hear dispositive motions is July 6, 2012.

**5.    Amendment of Pleadings.**

Plaintiff filed a First Amended Complaint before serving either defendant with the summons and complaint. Pursuant to the April 6th Order, the last day for a party to file a motion to amend the pleadings is December 30, 2011.

**6.    Evidence Preservation.**

Concerned about Bay 101's preservation of surveillance videotapes of the kitchen and casino floors on the day in October, 2009 when Plaintiff supposedly had an argument with a co-worker and a customer, Plaintiff's counsel had asked Bay 101's counsel to look into the matter

1  and ensure that action is taken to preserve the videotapes and any back up.  Bay 101 preserved
2  the tape that shows the October 2009 incident for the purpose of investigating that incident.  Bay
3  101 then kept the tape for purposes of plaintiff's grievance.  Other tapes of the kitchen and
4  casino floor were destroyed or taped over within fifteen (15) days per Bay 101's usual tape
5  retention policy as well as pursuant to City of San Jose gaming regulations.  In addition,
6  Plaintiff's counsel has already asked Bay 101's counsel to ensure that Bay 101 preserve e-mails,
7  voice mails and other electronically-recorded material related to this case.
8     Bay 101 has asked Dang's counsel to preserve any documents and/or emails in plaintiff's
9  possession related to this case.
10    **7.     Disclosures.**
11    The parties served their respective initial disclosures on September 17, 2010.
12    **8.     Discovery.**
13    The parties have engaged in limited discovery to date.  Pursuant to the April 6th Order,
14  Bay 101 was to produce, in advance of the June 8, 2011 mediation, the written report by the
15  independent investigator Bay 101 hired to conduct an investigation following Plaintiff's October
16  13, 2009 complaint to Bay 101 management.  After the entry of a Stipulated Protective Order on
17  April 5, 2011, Bay 101 produced that report.  In addition, prior to the June 8, 2011 mediation,
18  plaintiff was permitted to take the deposition of plaintiff's former supervisor while Bay 101 was
19  permitted to take the deposition of plaintiff.  On May 23, 2011, plaintiff took the deposition of
20  Phongphun (Ken) Meakcharoon.  Bay 101 did not take plaintiff's deposition.
21    The parties have agreed to comply with the Federal Rules of Civil Procedure, Rules 26 to
22  37, regarding discovery with the following modifications:
23        A.     <u>Production of Documents</u>.
24    The parties agree to follow Federal Rule of Civil Procedure 34 with regard to production
25  of documents.
26    The parties have agreed to produce documents in multi-page TIFF format or other agreed
27  upon format, via disc or DVD, rather than paper copies where such documents are available in
28  the electronic format described above or if not available in the format described above, in

whatever electronic format the responsive documents are available.  Absent a Court order, no party is under any obligation to convert paper documents into electronic format on behalf of the other party.

### B.    Interrogatories.

The parties agree to follow Federal Rule of Civil Procedure 33 with regard to interrogatories.

### C.    Depositions.

The parties agree to follow Federal Rules of Civil Procedure 28, 29, and 30 with regard to depositions.

As plaintiff has already taken the deposition of Mr. Meakcharoon, she may take up to nine (9) more non-expert depositions unless the parties stipulate to the additional deposition(s) or plaintiff has obtained leave of court.

Because Bay 101's deposition of plaintiff will require an interpreter and because of the eleven causes of action in the First Amended Complaint along with the numerous allegations made by plaintiff, Bay 101 sought a stipulation from plaintiff permitting Bay 101's deposition of plaintiff to exceed the 1 day of 7 hours limit.  In return, plaintiff asked Bay 101 to stipulate that it would not object if any of plaintiff's depositions involving witnesses who required interpreters needed to go beyond one day of seven hours.  Bay 101 was unwilling to enter into such an open-ended stipulation.  Bay 101 will instead file a motion requesting that plaintiff's deposition exceed the 1 day of 7 hours limit.

The parties agree to make reasonable good faith efforts to coordinate mutually agreeable dates for all depositions.

Federal Rule of Civil Procedure 45 shall govern the issuance of subpoenas.

### D.    Physical and Mental Examinations.

Bay 101 will bring a motion, pursuant to Federal Rule of Civil Procedure 35, seeking an IME of plaintiff based on her allegations in the First Amended Complaint.  Before filing any motion, though, Bay 101 will seek to enter into a stipulation with plaintiff regarding the IME.

///

E.   Case Schedule.

Pursuant to the April 6th Order, the following discovery deadlines have been set by the Court:

Close of fact discovery – February 13, 2012

Last day to file motions on fact discovery – February 27, 2012

Last day to disclose experts – March 16, 2012

Last day to identify rebuttal/opposition experts and serve rebuttal/opposition reports – April 13, 2012

Close of expert discovery – May 1, 2012

Last day to file motions on expert discovery – May 21, 2012

**9.   Class Actions.**

This is not a class action.

**10.   Related Cases.**

Pursuant to a grievance Plaintiff filed with Local 19 as required under the CBA after Bay 101 terminated her, an arbitration was held on August 10, 2010.

Unite Here! Local 19 ("the Union") filed a Petition to Confirm Arbitration Award and Compel Further Arbitration in the Santa Clara County Superior Court which Bay 101 subsequently removed to the United States District Court for the Northern District of California, San Jose Division.  That matter is titled *UNITE HERE! Local 19 v. Sutter's Place Inc. dba Bay 101*, Case No. 11-CV-02608 (HRL).  On June 10, 2011, the Union filed an administrative motion in this Court seeking a determination as to whether the two cases are related.  On June 23, 2011, this Court issued a Related Case Order finding that the Union's petition was related to plaintiff's lawsuit.

**11.   Relief.**

Plaintiff seeks the following relief:

a.   One extra hour of pay for every day a rest break is missed.  [CA Labor C. § 226.7].

///

  b. One extra hour of pay for every day a meal period is missed. [CA Labor C. § 226.7].

  c. Overtime wages for days when Plaintiff worked more than eight hours because she was unable to take a meal period. [FLSA, 29 U.S.C. § 201 et. seq.; CA Labor C. §§ 510, 1194].

  d. Thirty days of wages as waiting time penalty [Labor C. §§ 201, 203].

  e. Back pay and benefits from December 21, 2009 date of termination.

  f. Emotional distress.

  g. General damages/pain and suffering.

  h. Punitive damages.

  i. Attorneys' fees and costs if deemed prevailing party.

  j. Prejudgment interests.

**12. Settlement and ADR.**

The parties participated in a mediation with Judge William Martin of JAMS on Wednesday, June 8, 2011. The parties were unable to reach a settlement.

**13. Consent to Magistrate Judge For All Purposes.**

Bay 101 does not consent to a Magistrate Judge for all purposes.

**14. Other References.**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues.**

The parties are not presently in a position to determine what issues can be narrowed by agreement or motion, or what may be done to expedite the presentation of evidence at trial. Further, it has yet to be determined whether any party will seek bifurcation of any issues, claims, or defenses.

**16. Expedited Schedule.**

This is not the type of case that can be handled on an expedited basis with streamlined procedures.

**17.    Scheduling.**

The Court issued a scheduling order on April 6, 2011.

**18.    Trial.**

Plaintiff has demanded a jury trial. She anticipates a trial length of 10-15 court days.

Bay 101 requests a jury trial. It estimates a trial length of 10-12 court days depending on the causes of action that remain.

Pursuant to the April 6th Order, trial is currently scheduled to being on September 10, 2012 at 1:30 p.m.

**19.    Disclosure of Non-Party Interested Entities or Persons.**

Bay 101 has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.

**20.    Other Matters.**

The parties are amenable to discussing with one another, and with the Court, any other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

Pursuant to the April 6th Order, if the parties agree upon a discovery plan, the Court will approve the plan and excuse the parties from appearing at the Further Case Management Conference, currently set for July 8, 2011 at 10:30 a.m. Accordingly, the parties respectfully request that the Court approve the above discovery plan and vacate the July 8th Conference.

Dated: June 30, 2011                    ROBINSON & WOOD, INC.

                                        /s/  Ann A. Nguyen
                                        ANN A. NGUYEN

                                        Attorneys for Plaintiff,
                                        CUC DANG


Dated: June 30, 2011                    McMANIS FAULKNER

                                        /s/ Matthew Schechter
                                        MATTHEW SCHECHTER

                                        Attorneys for Defendant,
                                        SUTTER'S PLACE, INC. dba BAY 101

**ORDER**

Pursuant to the Joint Case Management Conference Statement above, the Court orders as follows:

1. The discovery plan set forth above is approved; and
2. The Case Management Conference scheduled for August 26, 2011 at 10:30 a.m. is hereby vacated.

IT IS SO ORDERED.

Dated: __August 2__, 2011

*Ronald M. Whyte*
JUDGE RONALD M. WHYTE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA