United States District Court
For the Northern District of California

**E-FILED on** 7/19/2012

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CUC DANG,

Plaintiff,

v.

SUTTER'S PLACE, INC. dba BAY 101 or BAY 101 CASINO, UNITE HERE! LOCAL 19, and DOES 1 through 20, inclusive,

Defendants.

No. C-10-02181 RMW

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

**[Re Docket No. 90]**

Defendant Sutter's Place, Inc. dba Bay 101 ("Bay 101" or "defendant") moves for summary adjudication as to plaintiff's first, second, and third causes of action. On July 13, 2012, the court held a hearing to consider defendant's motion. Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court grants in part and denies in part the motion for summary judgment.

## I. BACKGROUND

Plaintiff Cuc Dang brings this action against her former employer (Bay 101) and union (Unite Here! Local 19). As relevant to the present motion, plaintiff asserts causes of action against Bay 101 for (1) failure to provide meal and rest periods under Cal. Labor Code §§ 226.7 and 512, (2)

failure to pay overtime under 29 U.S.C. § 201 and Cal. Labor Code §§ 510 and 1194, and (3) failure to pay wages upon termination under Cal. Labor Code §§ 201 *et seq.*

Bay 101 operates a casino that is open twenty-four hours a day, seven days a week. Plaintiff worked at Bay 101 from June 2006 to December 2009 as a cook and later as a food server. During that time, plaintiff and other employees were required to write down the times they left for and returned from rest breaks. Through March 2007, employees also manually tracked their meal breaks; after that, they clocked in and out for meal breaks. Plaintiff's daily tracking sheets and time card for her period of employment reflect time taken for two breaks and a lunch each day. Dkt. No. 93 ("Gilbert Decl."), Exhs. D & E. However, plaintiff contends that she frequently was unable to take breaks and only filled out her time sheet and clocked in and out to avoid being penalized by Bay 101.

According to plaintiff, she often asked to take her 10-minute rest break only to be told by her supervisor to wait until later, either because there was no one to relieve her at the time or because there were too many orders coming in. Dkt. No. 100 ("Dang Decl.") ¶ 3. On many occasions, there was no later opportunity to take a break before her shift ended. *Id.* Plaintiff states that, as a cook, she was able to take at most one of her two 10-minute breaks per shift, so on average she missed at least one rest break each shift. *Id.* Similarly, plaintiff asserts that she regularly missed out on lunch breaks as a cook because there was too much work and not enough workers to relieve her. *Id.* ¶ 4. Sometimes, she would not be allowed to go to lunch because there was no one to fill in for her, and she had to eat standing at her work station. *Id.* Other times, she would leave for lunch but be called back before the end of the 30-minute period because they needed her to fill orders. *Id.* Plaintiff admits she has no documentation showing how many days she did not get all or part of her meal breaks, Dkt. No. 92-6 (Dang Dep.) at 313:6-10, but she claims that on average she was unable to take a full, uninterrupted meal break two days out of a five-day work week, Dang Decl. ¶ 4. Once plaintiff became a server on the casino floor, she claims, she was allowed time for a 30-minute lunch break but never had time for a 10-minute rest break. *Id.* ¶ 5. She would ask to take the rest breaks but always be told to wait until later, either after another employee came back from break or after the casino became less busy. *Id.*

One of plaintiff's supervisors, Phongphun Meakcharoon, testified that he has never prevented employees from taking a lunch break because it was too busy, never called them back in the middle of their lunch break, and never had an employee having to eat their meal at their station. Dkt. No. 92-2 (Meakcharoon Dep.) at 37:18-20, 58:18-25. In addition, plaintiff testified that neither Nick Ortega nor John St. Croix, who had also been her supervisors, ever said that she was not allowed to take a break. Dkt. Nos. 92-6 & 109-1 (Dang Dep.) at 313:25-314:4. Mr. Meakcharoon also testified that he would post a schedule in the kitchen indicating what time each employee was supposed to go for a meal break; employees had to let him know when they went. Dkt. No. 92-2 (Meakcharoon Dep.) at 36:5-17, 37:14-17. People in certain positions, including cooks but not servers, also had to notify him when they left for a rest break. *Id.* at 38:15-39:11.

Bay 101 held annual training sessions that covered its policy for meal breaks, among other topics. Gilbert Decl. ¶ 5. Plaintiff attended annual training meetings in 2007, 2008, and 2009.[1] *Id.* ¶ 6. The 2007 presentation regarding meal breaks explained the required 30-minute break under "California Meal Break Rules" and provided that under "Bay 101 Meal Break Rules" "[a]ll hourly employees who are scheduled to work an 8 hr. shift must take a meal break regardless of the actual hours worked." *Id.* ¶ 7 & Exh. A. The presentation also noted that meal break violations would be recorded and repeated violations could result in suspension or termination. *Id.* Also in 2007, Bay 101 issued a memo to employees noting that they were required to punch in and out for lunch and that "[m]anagement wants to make sure all employees are receiving and taking their meal times. By law all employees working 6 or more hours per day must take a 30 minute meal period." *Id.* ¶ 9 & Exh. C. Employees would be warned or get written up when they clocked out for less than 30 minutes, even when they were one or two minutes under. Dkt. No. 92-2 (Meakcharoon Dep.) at 59:19-60:10; Dkt. No. 92-3 (Ortega Dep.) at 169:5-21. On at least five occasions, plaintiff received a written warning for taking a lunch of less than 30 minutes. Gilbert Decl., Exh. G. These warnings

[1] In her first amended complaint, plaintiff alleges that she was only paid at her regular rate for training sessions that caused her to work more than eight hours a day or forty hours a week. Dkt. No. 5 ¶ 45. On summary judgment, Bay 101 presents evidence that plaintiff was only scheduled for training sessions on her days off and that, when attending the training session caused her to work more than forty hours that week, she was paid overtime. *See* Gilbert Decl. ¶¶ 5-6 & Exh. F at 6, 11, 17. Plaintiff did not dispute this evidence and, at the hearing, plaintiff's counsel represented that they will not rely on time spent at the training sessions as a basis for plaintiff's overtime claim.

state that "[y]ou are required by California law to take a 30 minute lunch for each day you work at least 6 hours" and warned that future violations would result in suspension. *Id.*

Plaintiff claims that, because of the warnings and the threat of being suspended for not filling out a daily tracking sheet, she and other employees would fill in times for breaks even if they did not get to take them. Dang Decl. ¶ 6. She and many other employees began filling in all of the times at the beginning of their shifts to avoid being penalized. *Id.* Similarly, because of the penalties for failing to clock in and out for lunch, plaintiff would clock out but continue working off the clock and then remember to clock in after 30 minutes. *Id.* ¶ 7. Contrary to Mr. Meakcharoon's testimony, plaintiff asserts that there was no schedule to show employees when they could take their lunch breaks. *Id.* ¶ 8. Plaintiff states that she complained to her co-workers and supervisors, Jorge Rodriguez and Mr. Meakcharoon, about not being able to take rest breaks and meal breaks, and they in turn complained to her that they, too, had trouble taking breaks because there was too much work and not enough workers to fill in for the breaks. *Id.* ¶ 9. Plaintiff also claims to be "aware of" other employees making complaints. *Id.*

Miguel Gutierrez, a former porter at Bay 101, states that he also was unable to take rest breaks and full meal breaks, under similar conditions as plaintiff. Dkt. No. 99 ("Gutierrez Decl.") ¶¶ 5-6. He also saw other workers fill out their break and lunch times on their daily tracking sheets at the beginning of their shifts. *Id.* ¶ 9. Mr. Gutierrez claims he complained to his supervisor, Nick Ortega, and the casino shift manager, Mike Wilson, about having to miss breaks, but nothing changed. *Id.* ¶ 10. Mr. Ortega, however, testified that he could not recall any employees ever complaining to him about their inability to take breaks. Dkt. No. 106-1 (Ortega Dep.) at 161:1-10, 167:2-6, 176:16-21, 178:6-9. In addition, Nga Nguyen, who had also been a porter, testified that she always took her breaks and was always allowed to take them. Dkt. No. 92-7 (Nguyen Dep.) at 91:21-92:11, 93:3-23.

## II. ANALYSIS

### A.  Legal Standards

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

United States District Court
For the Northern District of California

matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

**B. Evidentiary Objections**

Defendant objects to the declarations submitted by plaintiff and Mr. Gutierrez. Dkt. No. 107.

As an initial matter, defendant objects that Mr. Gutierrez's declaration is irrelevant in its entirety, noting that this is not a class action, Mr. Gutierrez is not a named party, and Mr. Gutierrez does not attest to any facts concerning *plaintiff's* issues regarding her breaks. Although the court was unable to find any authority in cases not brought as class actions, it seems plaintiff could still support her claims by evidence of a pervasive company policy or practice regarding breaks. However, Mr. Gutierrez's testimony is limited to his own interactions with Mr. Ortega, except for his conclusory assertion that other workers also filled out their daily tracking sheets ahead of time "because they were afraid of being disciplined . . . even though at times they, too, were unable to take their rest breaks and lunch breaks," which lacks foundation. Thus, Mr. Gutierrez's testimony is not probative of plaintiff's experience.[2] However, the court finds that other portions of Mr. Gutierrez's declaration are relevant and admissible, for example to show that Bay 101 staff had notice of employees missing their breaks.

Defendant also objects to specific portions of plaintiff's and Mr. Gutierrez's declarations. Most of these objections are for (1) hearsay and (2) lack of personal knowledge, insufficient foundation, or speculation. The hearsay objections are overruled. First, most of the statements are

---

[2] For similar reasons, the court finds that Ms. Nguyen's testimony is irrelevant and does not consider it in deciding this motion.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT—No. C-10-02181 RMW
LJP 5

not being offered for the truth of the matter asserted. Frequently, they are simply instructions that were given to plaintiff or Mr. Gutierrez. Second, even where statements are potentially being offered for their truth, such as that the casino was too busy for plaintiff to take a break, it appears that these statements are not hearsay because they were made by defendant's agents and employees within the scope of their relationship with defendant. *See* Fed. R. Evid. 801(d)(2)(D). In addition, although plaintiff's declaration may be inartfully worded, it appears that many of her assertions are based on information that she was told by her supervisors, which as just noted is admissible.

Thus, defendant's objections are overruled except the following, which are sustained:

Dang Declaration

7. "Our supervisors were aware of this practice." (¶ 6) - Rule 602

12. "I am aware of other employees also complaining . . . . but nothing was done." (¶ 9) - Rule 602

17. Paragraph 12 in its entirety. - Rule 602

Gutierrez Declaration

10. "They did so because . . . lunch breaks." (¶ 9) - Rule 602

11. "and never did anything about my complaints." (¶ 10) - Rule 602

13. "I believe that . . . I would not have been terminated." (¶ 11) - Rule 602

14. "I had picked up . . . . intending to turn in the money at my next break." (¶ 11) - Relevance

15. Paragraph 12 in its entirety. - Rule 602

**C. Plaintiff's Wage and Hour Claims**

The three claims presently at issue seem to turn on a factual dispute about whether plaintiff actually took her rest breaks and meal breaks or whether she was forced to miss some breaks even while recording that she took them. On summary judgment, the court is bound to accept plaintiff's sworn statements concerning her inability to take rest breaks. *See McLaughlin v. Liu*, 849 F.2d 1205, 1207-08 (9th Cir. 1988); *Leslie*, 198 F.3d at 1158-59 (collecting cases). Defendant argues that the "overwhelming" evidence it has submitted renders plaintiff's claims unbelievable. However, the court may not weigh competing evidence and rather must conclude from this conflict that there remains a genuine dispute for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987) ("[I]f the non-moving party adduces direct evidence of a genuine issue of fact, such evidence is not to be weighed against the moving party's conflicting evidence, but rather is to be submitted to the trier of fact for resolution.").

It is important to note that plaintiff's sworn statements constitute direct evidence regarding whether she was able to take breaks. The Ninth Circuit has repeatedly stated that the nonmoving party's direct evidence of a specific fact must be taken as true, even if the court may reject "inferences from the nonmoving party's 'specific facts' as to other material facts" if they are unreasonable "in view of other undisputed background or contextual facts." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987); *accord McLaughlin*, 849 F.2d at 1208 ("Our opinions on summary judgment subsequent to *Anderson* and *Matsushita* [*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)] have honored the difference between weighing direct evidence and refusing to draw unreasonable inferences from circumstantial evidence."). In *McLaughlin*, the defendant submitted a sworn declaration, and the court held that summary judgment could not be granted:

> This case does not involve inferences from circumstantial evidence. Liu's sworn statements that he calculated and paid overtime in accordance with the requirements of law are direct evidence of the central fact in dispute. Liu does not ask that inferences be drawn in his favor, but that his testimony be taken as true. To this he is clearly entitled under *Anderson* ("The evidence of the non-movant is to be believed," 477 U.S. at 255, 106 S.Ct. at 1513) and a host of other decisions. Summary judgment cannot be justified in the face of such evidence.

849 F.2d at 1207-08. Similarly, the court in *Leslie* noted there was "extensive documentary evidence flatly contradicting Leslie's deposition and declaration" but nonetheless reversed the grant of summary judgment. 198 F.3d at 1156, 1160-61. Here, as in *McLaughlin*, plaintiff's testimony is direct evidence of the central fact in dispute. The court need not resolve whether plaintiff has sufficient evidence of her broader assertions, such as that defendant "operated a busy casino and did not have sufficient staffing to relieve employees of her their breaks," because the facts on which plaintiff has presented direct evidence are sufficient to preclude summary judgment.

Defendant argues that the court may reject plaintiff's account under *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). However, *Scott* is distinguishable. In *Scott*, the Supreme Court rejected the respondent's account of a car chase because it was flatly contradicted by a police videotape of the chase. *Id.* at 378-81. The Court acknowledged the typical rule that a plaintiff's version of the facts must be adopted and called the existence of the videotape "an added wrinkle in this case." *Id.* at 378. The Court also noted that "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Id.* Here, plaintiff has given an account that, if taken as true, is entirely consistent with the documentary evidence. And, unlike in *Scott*, there *are* allegations that the time records are not accurate. Thus, under well-established standards for summary judgment that are not questioned by *Scott*, the circumstances of this case do not permit the court to adopt defendant's interpretation of the evidence and reject plaintiff's account.

Defendant also argues that plaintiff's declaration contradicts her sworn deposition testimony. Under what is known as the "sham affidavit rule," a party cannot create an issue of fact by an affidavit contradicting her prior deposition testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). However, this rule is subject to "two important limitations": (1) the rule is not automatic; rather, "the district court must make a factual determination that the contradiction was actually a 'sham,'" and (2) "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* (citations omitted). The nonmoving party may elaborate upon, explain, or clarify prior testimony, and minor inconsistencies resulting from an honest discrepancy, a mistake, or newly discovered evidence are not a basis for excluding an affidavit. *Id.* at 998-99 (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir.1995)).

Here, defendant has not identified any genuine contradictions between plaintiff's declaration and deposition that would justify applying the sham affidavit rule. For example, plaintiff admitted that she did not keep a record of how many days she missed meal breaks, Dkt. No. 92-6 (Dang Dep.) at 311:23-312:6, but that does not preclude her from estimating how many breaks she missed on

United States District Court
For the Northern District of California

average. Plaintiff also testified that neither Mr. Ortega nor Mr. St. Croix told her she was not "allowed" to take breaks, Dkt. Nos. 92-6 & 109-1 (Dang Dep.) at 313:25-314:4, but this is not unambiguously inconsistent with her declaration. In her declaration, plaintiff states that she would ask to take rest breaks and be told to wait, not that she was told she was not allowed to take a break at all. Dang Decl. ¶ 3. It also appears that Mr. Ortega and Mr. St. Croix were not plaintiff's only supervisors, so a reasonable inference from her statements that she was not allowed to go to lunch, *id.* ¶ 4, is that other individuals were involved. While plaintiff's declaration could set forth greater detail about who said what, it is sufficient to meet her burden on summary judgment and does not run afoul of the sham affidavit rule. Defendant also argues that plaintiff's claim is defeated by her testimony that she always looked at her pay stubs and brought every paycheck error to HR, who fixed it, *see* Dkt. No. 92-6 (Dang Dep.) at 324:18-325:11. In her declaration, plaintiff explains that she did not know until she retained counsel, which was presumably after she was terminated, that she was entitled to compensation for breaks she had to miss. Dang Decl. ¶ 11. Defendant argues that this is a contradiction because she failed to offer the explanation at her deposition. However, defendant has not shown that the line of questioning would have called for such an explanation. Thus, plaintiff's testimony about her previous interactions with defendant do not preclude her from now asserting that she was not fully paid.

**D. Attorney's Fees**

Defendant argues that plaintiff is not entitled to recover attorney's fees on her meal and rest break claim, citing *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012). Plaintiff does not address this issue in her opposition. In *Kirby*, the court concluded, "in light of the relevant statutory language and legislative history, that neither [Labor Code] section 1194 nor section 218.5 authorizes an award of attorney's fees to a party that prevails on a section 226.7 claim." *Id.* at 1248. Plaintiff has not identified any other basis for an award of fees. Thus, defendant is entitled to partial summary judgment that plaintiff may not recover attorney's fees on her first cause of action.

**E. Waiting Time Penalties**

Defendant argues that plaintiff's claim for waiting time penalties fails under Cal. Code Regs., tit. 8, § 13520 because there is a good faith dispute that any wages are due.

> A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."

*Id.* § 13520(a). Plaintiff argues that the existence of a good faith dispute raises a question of fact for the jury in light of plaintiff's evidence that defendant was aware that some of its employees were missing meal breaks despite following the tracking sheet and punch clock systems. Defendant argues that, since it need not ultimately prevail on the defense to assert a good faith dispute, the jury's verdict will not be determinative and it is therefore a legal question that cannot preclude summary judgment. However, while a jury may have to separately determine the merits of the underlying claim and the reasonableness of the defense, it seems that factual disputes could underlie both determinations, such that they cannot be resolved on summary judgment. Defendant has cited no authority to the contrary.

The court is mindful that the regulations provide that a defense may be based in "law or fact." However, it cannot be the case that a straight denial of plaintiff's version of the facts always constitutes a defense that triggers the good faith exception. Otherwise, the vast majority of defendants would escape liability for waiting time penalties, simply by disputing the facts. Here, defendant has also produced some evidence that employees did take breaks, including plaintiff's time records and testimony by its agents. However, if plaintiff's evidence is taken as true, a jury could find that defendant's denial is unreasonable. For example, if a jury accepts plaintiff's and Mr. Gutierrez's statements that they complained to supervisors about their inability to take breaks, then the jury might conclude that defendant was unreasonable in insisting that plaintiff received all the compensation due to her. California courts have held that evidence showing the defendant was in fact aware that employees were not being properly compensated will support an award of waiting time penalties:

> [E]vidence was presented at trial showing that appellant was aware that employees were not being compensated for nonproductive time. The trial court found that appellant's supervisors created an environment in which the foremen were strongly discouraged from recording time spent by themselves and the crew performing nonproductive tasks. Respondents testified that they raised the issue to supervisors but were told by supervisors and area managers that they would not be compensated for such time. In short, the evidence showed that appellant's failure to pay for

> nonproductive time was intentional and willful. This evidence supports the award of waiting time penalties.

*Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 326 (2005). Plaintiff's evidence raises analogous factual issues here. Thus, summary judgment as to waiting time penalties is denied.

**III. ORDER**

For the foregoing reasons, the court grants summary judgment on plaintiff's claim for attorney's fees for violation of Cal. Labor Code § 226.7. The remainder of defendant's motion for summary judgment is denied.

DATED: July 19, 2012

RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California