E-FILED on    12/12/12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CUC DANG,<br><br>            Plaintiff,<br><br>      v.<br><br>SUTTER'S PLACE, INC. dba BAY 101 or BAY 101 CASINO, UNITE HERE! LOCAL 19, and DOES 1 through 20, inclusive,<br><br>            Defendants. | No. C-10-02181 RMW<br><br>RULINGS ON MOTIONS *IN LIMINE* |

**Plaintiff's *In Limine* Motions**

    **1.**    **To Exclude Evidence of Collateral Source Payments**

Granted. The prohibition on such evidence applies to both sides.

    **2.**    **To Preclude Defense Expert Rick Ostiller from Testifying Re: (A) Plaintiff's Employability and (B) Plaintiff's Alternative Potential Source of Income at the San Jose Flea Market**

Specifically to preclude:

    a.    Testimony that plaintiff should have been able to find a job within one year of being terminated by Bay 101. Tentatively granted. It does not appear that Ostiller has a proper basis for assuming one year as the length of time it would have taken plaintiff to find a new job. While it would be proper for Ostiller to rely on Harper's report and assume Harper's opinions to be

RULINGS ON MOTIONS IN LIMINE—No. C-10-02181 RMW
LJP

1  true, Ostiller testified in deposition that Harper's report does not specify a time frame. Dkt. No. 177-
2  1 at 23:16-18. Without admissible testimony about where the one-year figure comes from, the jury
3  would be confused and it would be unfairly prejudicial to plaintiff for Ostiller to simply state that he
4  picked that number. Thus, unless independent evidence or testimony is introduced that allows
5  Ostiller to assume the length of time it would have taken for plaintiff to find a new job, Ostiller may
6  not give testimony that suggests a particular length of time to the jury. Ostiller may, however,
7  testify about his general method for calculating damages in a way that allows the jury to apply it
8  based on any evidence supporting a reasonable time for plaintiff to have remained unemployed.

9        b.  Testimony about plaintiff's alternative potential source of income by operating
10 a booth at the San Jose flea market. Denied. Ostiller may testify about his alternative damages
11 calculation, as it is based on plaintiff's deposition testimony about what she earned at the flea
12 market. Ostiller may rely on his assistant's phone call to determine whether space was available at
13 the flea market. *See* FRE 703. The content of the phone call itself is, however, hearsay and should
14 not be considered for its truth but rather only to evaluate Ostiller's opinion testimony. A limiting
15 instruction may be required on plaintiff's request.

16     **3.**    **To Exclude Witnesses from Courtroom Except when Testifying**

17 As the parties agreed at the pre-trial conference on August 23, 2012, witnesses are excluded
18 from the courtroom, with the following exceptions: plaintiff; defendant's corporate representative
19 Ronald Werner; and experts during the testimony of opposing experts whose reports and deposition
20 testimony they reviewed and considered in forming their opinions.

21     **4.**    **Request for Judicial Notice of Arbitration Award**
22 See discussion below of defendant's motion no. 8.

23

24 **Defendant's *In Limine* Motions**

25     **1.**    **To Exclude Evidence of the Arbitration Award and Its Implementation**
26 See discussion below of defendant's motion no. 8.

27     **2.**    **To Exclude Witnesses from the Courtroom**
28 Granted. See discussion above of plaintiff's motion no. 3.

RULINGS ON MOTIONS IN LIMINE—No. C-10-02181 RMW
LJP                                              2

### 3. To Exclude Testimony from Plaintiff's Expert, D. Jan Duffy

Granted in part. Duffy may only testify as to policies and practices that are commonly adopted in the relevant industry and the impact such policies (or lack thereof) may have on employees. For example, Duffy could testify that it is commonly accepted in the industry that, upon confirming the existence of sexual harassment, the harasser should be transferred rather than the victim, and why unilaterally reassigning the victim is problematic. *See* Dkt. No. 155-2 (Duffy Report) at 32. However, Duffy may not express her subjective opinions on whether specific policies are "fair" or her belief as to whether specific conduct occurred in this case. Furthermore, Duffy may not refer to the Sarbanes-Oxley Act or the Federal Sentencing Guidelines, as the court believes such references will unduly confuse the jury and Duffy can testify as to customary industry practices without citing such legal sources.

### 4. To Exclude Evidence Regarding Plaintiff's Unemployment Insurance Claim

Granted.

### 5. To Preclude Expert Witness Dr. Berg from Testifying About Arbitration, Carole Edman's Investigation, and Plaintiff's Job Search

Specifically to preclude:

a. Reference to the result of the arbitration. Granted. Berg may, however, testify about the effect of the arbitration process on plaintiff's psychological condition.

b. Opinions as to the quality of Edman's report. Granted.

c. Hearsay regarding plaintiff's job search. Denied. Berg may testify about events plaintiff described to him and his opinion about their impact on her psychological condition. As to the specific statements identified by defendant, it is not hearsay for plaintiff to state that potential employers asked for her phone number and age, nor is it hearsay for plaintiff to "wonder[] whether when she talks to them, they don't think that she is bright and witty" (Dkt. No. 135-3 at 6). Depending on whether plaintiff's testimony covers the same events she relayed to Berg, the court will consider giving a limiting instruction on the expert's testimony.

### 6. To Exclude Evidence of Conduct Occurring Outside of the One-Year Statute of Limitations

Denied. Plaintiff has alleged ongoing discrimination and retaliation beginning after she complained about sexual harassment by her coworker. The existence of a continuing violation appears to be a question of fact. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1059 (2005) ("We conclude that *a reasonable trier of fact could find* that [alleged actions] were similar in kind and occurred with sufficient frequency to constitute a continuous and temporally related course of conduct." (emphasis added)). Thus, it is for the jury to decide whether there is a continuing violation under the test set forth in *Richards v. CH2M Hill, Inc.*, which requires the plaintiff to show that "the employer's actions are (1) sufficiently similar in kind . . . ; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." 26 Cal. 4th 798, 823 (2001). "'[P]ermanence' properly should be understood to mean "that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." *Yanowitz*, 36 Cal. 4th at 1059 n.19 (quoting *Richards*, 26 Cal. 4th at 823).

Defendant asserts that plaintiff cannot base liability on the alleged sexual harassment by Lucio Suarez, as that conduct is significantly different from the subsequent alleged conduct, and plaintiff stated in her deposition that after she complained by letter in 2007, she had no further problems with Suarez. Dkt. No. 135-11 at 188:11-21. Defendant's argument may convince the jury that events occurring after April 2007 do not meet the requirements necessary to show a continuing violation but plaintiff has enough evidence to raise a triable issue of fact.

Defendant submits that *Trovato v. Beckman Coulter Inc.*, 192 Cal. App. 4th 319 (2011), which affirmed a summary judgment for an employer, is a factually indistinguishable case. In *Trovato* the plaintiff attempted to salvage her retaliation and harassment claims based upon the continuing violation theory, specifically that conduct occurring within the limitations period was similar in kind to the conduct that fell outside the period. The flaw in the plaintiff's argument in *Trovato* was that there was no act of harassment or retaliation that occurred during the limitations period to make the continuing violation doctrine applicable. *Id.* at 327. In contrast, in the instant

1  case, plaintiff contends that she was harassed by supervisors because of her claim against Suarez up
2  until the time her employment was terminated.

### 7. To Exclude Evidence Regarding the Legality of Carole Edman's Workplace Investigation

Granted.  Defendant seeks to exclude any testimony from by Jan Duffy, plaintiff's expert on management practices and procedures, that defendant's investigator, Carole Edman, was unlicensed and, therefore, not legally qualified to do the investigation she did.  Duffy's testimony is not helpful to the jury in understanding this issue.  *See* FRE 702(a).  Furthermore, the court finds that any evidence about Edman's licensing requirement should be excluded under Rule 403.  The matter presents a significant risk of jury confusion and consumption of time.  At the same time, the court finds the matter to be only marginally relevant to plaintiff's claim that defendant undertook the investigation in bad faith, particularly absent an offer of proof that defendant knew of the licensing requirement and Edman's lack of a license.

### 8. To Exclude Evidence of Settlement Discussions

The parties have filed multiple motions addressing the admissibility and evidentiary value of the arbitration award, the subsequent dispute concerning its implementation, and offers to reinstate plaintiff.  Plaintiff contends that she seeks to admit these matters not for the admittedly improper purpose of proving defendant's liability but to address the issue of mitigation of damages.  However, the court believes admitting the arbitration award poses a substantial risk of confusing the jury and consuming time to explain the differences in the issues involved in the arbitration and this, in addition to the potential prejudice to defendant.  The court also questions whether proving mitigation of damages is an improper purpose under Fed. R. Evid. 408 because it goes to the "amount of a claim that was disputed as to . . . amount."

Plaintiff relies on *Orzel v. Wauwatosa Fire Dept.*, 697 F.2d 743 (7th Cir. 1983), to argue that she may introduce evidence of the reinstatement offer if it is relevant to the issue of damages and mitigation of damages.  In *Orzel*, the defendant employer argued it should not be held liable for any damages incurred by the plaintiff after the date it first offered to reinstate the plaintiff.  *Id.* at 757.  The Seventh Circuit noted that the magistrate had admitted evidence of the offer as an exception to Rule 408 because he deemed it relevant to mitigation, but the court did not explicitly affirm that

RULINGS ON MOTIONS IN LIMINE—No. C-10-02181 RMW
LJP                                                      5

1 ruling. *Id.* at 757 n.26.  Instead, the court proceeded to consider the offer but ultimately concluded it
2 did not serve to cut off the defendant's liability.  *Id.* at 757.  If defendant in this case argued that its
3 reinstatement offer cut off liability for plaintiff's damages, that would resemble the fact pattern in
4 *Orzel*, and such evidence might be considered relevant and admissible, although just as in *Orzel*, it
5 might not actually cut off liability.  However, it is defendant who is trying to *exclude* evidence of the
6 arbitration award.  The court has difficulty seeing how the award itself is relevant to plaintiff's
7 mitigation theory, as opposed to the fact that plaintiff participated in other dispute resolution
8 proceedings offering the possibility that she would be reinstated.

9       Thus, in light of the court's Rule 403 concerns, the court tentatively grants the motion to
10 exclude evidence of the arbitration award and reinstatement offer.  Plaintiff may present evidence
11 that she was involved in an arbitration, but she may not refer to the outcome of those proceedings.
12 However, depending on how defendant presents its argument that plaintiff failed to mitigate, the
13 court believes plaintiff is entitled to introduce evidence of the arbitration award to rebut defendant's
14 argument.  For example, if defendant claims that plaintiff failed to mitigate damages while the
15 arbitration was pending because she unreasonably spent her time participating in the arbitration to
16 the exclusion of looking for another job, then plaintiff may respond by arguing that her allocation of
17 more time to the arbitration was reasonable given that the arbitration award was ultimately favorable
18 to her and was supposed to restore her to her former position at Bay 101.

19     **9.**    **To Limit Expert Witness Testimony to Opinions Expressed in Expert Reports and at Depositions; to Limit Expert Testimony to the Expert's Field of**
20           **Expertise; and to Exclude the Introduction of Hearsay by Experts at Trial**

21       The court does not rule on this motion, as it is too broad.  The court will consider objections
22 to specific expert testimony as they arise.

23     **10.**    **To Exclude Evidence of Bay 101's Financial Condition**

24       Granted.  Pursuant to defendant's request, the court bifurcates the issue of punitive damages
25 and will follow the California state court procedure as follows: In Phase One, any evidence of
26 defendant's financial condition is excluded and the jury will be asked whether there is clear and
27 convincing evidence that defendant is guilty of malice, oppression, or fraud.  If the jury returns a
28

*(left margin: **United States District Court** / For the Northern District of California)*

RULINGS ON MOTIONS IN LIMINE—No. C-10-02181 RMW
LJP      6

verdict in plaintiff's favor on liability and finds malice, oppression, or fraud, then the case will proceed to Phase Two in which the same jury considers what amount of punitive damages to award.

**11. To Prohibit Use of Inflammatory, Conclusory, and Prejudicial Language About Undecided Factual Issues**

Granted in part. The court believes this to be a matter of common sense. Witnesses may not characterize people in derogatory terms and may not generally refer to individuals by labels such as "harasser" or "victim" instead of by name. Witnesses may, however, testify that they felt certain incidents were examples of harassment, and plaintiff may testify, for example, that she felt like she was a victim. Counsel are also free to use such language during closing arguments.

DATED: December 12, 2012

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge